## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 11 2019, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Sheldon C. McAuley
Clyde, North Carolina

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of Sheldon Contrell Woods, Jr., and Tayja Monae Woods, By Next Friend,

Sheldon C. McAuley,

*Appellant-Respondent,*

v.

Tameka R. Woods,

*Appellee-Petitioner,*

and

State of Indiana,

*Appellee-Intervenor.*

December 11, 2019

Court of Appeals Case No. 19A-JP-748

Appeal from the
Allen Superior Court

The Honorable
Andrea R. Trevino, Judge
The Honorable
Carolyn S. Foley, Magistrate

Trial Court Cause No.
02D07-9808-JP-248

**Kirsch, Judge.**

Sheldon C. McAuley ("McAuley") appeals the trial court's order denying his motion for relief from judgment, specifically an order finding McAuley's child support arrearage to be $30,621.84. McAuley raises the following restated issue for our review: whether the trial court abused its discretion when it denied his motion for relief from judgment.

We affirm.

## Facts and Procedural History

McAuley has two children with Tameka Woods ("Woods"): Sheldon Contrell Woods, Jr. ("Sheldon"), born July 13, 1997, and Tayja Monae Woods ("Tayja"), born January 8, 1999. *Appellant's App. Vol. 2* at 45. On January 10, 2007, the trial court ordered McAuley to pay child support in the amount of $57.00 per week plus $13.00 per week towards his arrearage. *Appellee's App. Vol. 2* at 2. The trial court also ordered the parties to immediately notify the clerk of the Allen Circuit Court in writing of any change in address. *Id*. at 3.

On September 30, 2010, at a review hearing, McAuley was served in open court with a Petition for Contempt and was advised of his rights regarding the contempt proceedings. *Id*. at 5-6. On October 13, 2010, the trial court ordered the parties to appear for a contempt hearing scheduled for January 20, 2011. *Id*. at 6. On January 24, 2011, the trial court entered an order indicating that McAuley failed to appear at the January 20 hearing and finding that McAuley was incarcerated at that time in the Indiana Department of Correction ("the

DOC") with an earliest possible release date of April 13, 2014. *Appellant's App. Vol. 2* at 47.

[5] Sheldon was emancipated on July 13, 2016, and Tayja was emancipated on January 8, 2018. *Id*. at 45. On April 11, 2018, the State filed a motion to determine arrears and stated that Tayja was emancipated on January 8 and that McAuley's child support obligation ceased to accrue at that time. *Appellee's App. Vol. 2* at 7. The motion set forth the State's calculation of McAuley's arrearage to be $30,564.84 as of April 10, 2018. *Id*.

[6] The trial court scheduled a hearing on the State's motion to determine arrears for June 13, 2018. *Id*. at 13. The notice of hearing, dated April 11, 2018, was sent to McAuley at an address in Fort Wayne, Indiana. *Id*. On May 31, 2018, McAuley filed a "Motion for Telephonic Hearing and Waiver of Personal Appearance," stating that appearing in person would be an undue hardship because he lived in Clyde, North Carolina and was suffering from an eye injury that made it difficult for him to drive. *Id*. at 15-16.

[7] On June 13, 2018, a hearing was held on the State's motion to determine arrears, and McAuley appeared telephonically at the hearing. *Appellant's App. Vol. 2* at 41. On June 28, 2018, the trial court issued an order, finding that McAuley owed a child support arrearage in the amount of $30,621.84 ("the Arrearage Order"), and that order was mailed to McAuley at his North Carolina address. *Id*. at 42. On February 22, 2019, McAuley filed a motion for

relief from judgment, which the trial court denied on March 4, 2019. *Id.* at 21, 18-20. McAuley now appeals.

# Discussion and Decision

[8] McAuley argues that the trial court abused its discretion when it denied his motion for relief from judgment. McAuley sought relief from the trial court pursuant to Indiana Trial Rule 60(B)(6) and (8). Trial Rule 60(B) provides in pertinent part:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
> . . . .
>
> (6) the judgment is void; [or]
>
> . . . .
>
> 8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

Ind. Trial Rule 60(B)(6), (8). The burden is on the movant to establish grounds for Trial Rule 60(B) relief. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010). A motion made under Trial Rule 60(B) is addressed to the "equitable discretion" of the trial court, and the grant or denial of the motion "will be disturbed only for an abuse of that discretion. *Id.* at 740-41. An abuse of

discretion occurs when the trial court's judgment is against the logic and effect of the facts before it and the inferences that may be drawn therefrom. *Id*. at 741.

[9]     McAuley contends that it was an abuse of discretion for the trial court to deny his motion for relief from judgment. Specifically, he argues that the trial court violated his due process rights when it failed to serve him with the January 24, 2011 order issued after a contempt hearing, at which McAuley failed to appear, which found that McAuley was incarcerated at that time in the DOC with an earliest possible release date of April 13, 2014. *Appellant's App. Vol. 2* at 47. Because the trial court was aware that he was incarcerated at the time, he asserts that the trial court should have served the order to him in the DOC, and the failure to do so caused him to miss an opportunity to be heard on the contempt issue. McAuley further argues that he should be relieved from his arrearage because, at the hearing held on September 30, 2010, he "impliedly litigated" a substantial change in his circumstances necessitating a modification of child support when he advised the trial court that he was incarcerated. *Appellant's Br*. at 12-13.[1]

---

[1] McAuley also argues that he had a due process right to be notified at least every three years of his right to review his case, and he was a "victim of a . . . seven year undisturbed order that caused punitive measures that imposed a large arrearage on him upon release from prison." *Appellant's Br*. at 13. To support his contention, he cites to 42 United States Code section 666(a)(10)(C), which requires States to have laws requiring certain procedures to improve the effectiveness of child support enforcement, including procedures under which parties to child support actions are notified every three years that they may request a review of their cases. However, there is no private right of action under that section as the United States Supreme Court has held that the Title IV-D program "was not intended to benefit individual children and custodial parents," and does not create "an *individual* entitlement to services"; instead it is "simply a yardstick . . . to

Trial Rule 60(B) affords relief from circumstances that could not have been discovered during the period a motion to correct error could have been filed. *Bello v. Bello*, 102 N.E.3d 891, 894 (Ind. Ct. App. 2018). "[I]t is not meant to be used as a substitute for direct appeal or to revive an expired attempt to appeal." *Id*. "Trial Rule 60(B) motions address only the procedural, equitable grounds justifying relief from the legal finality of a final judgment, not the legal merits." *In re Paternity of P.S.S.*, 934 N.E.2d at 740. Here, McAuley's motion for relief from judgment only addressed the legal merits of the Arrearage Order and provided no explanation as to why his Trial Rule 60(B) motion was not filed until nearly eight months later.

Because the Arrearage Order was an order for the payment of money, it was an interlocutory appeal as of right. *See* Ind. Appellate Rule 14(A)(1) ("Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the Clerk within thirty (30) days after the notation of the interlocutory order in the Chronological Case Summary: (1) For the payment of money . . . ."). McAuley, therefore, was required to file either a notice of appeal or a motion to correct error within thirty days of the Arrearage Order. App. R. 9(A); App. R. 14(A)(1); T.R. 59(C). he did neither. Instead, he filed a motion for relief from judgment eight months after the Arrearage Order was issued; his motion did not provide any basis as to why he was unable to file a

---

measure the *systemwide* performance of a State's Title IV-D program." *Blessing v. Freestone*, 520 U.S. 329, 343 (1997) (emphasis in original).

timely appeal or motion to correct error. *Appellant's App. Vol. 2 at 21-28.* The Arrearage Order was sent to McAuley at his North Carolina address, and his motion did not include a claim that he did not timely receive notice of the Arrearage Order. Under Trial Rule 60(B)(6) and (8), a motion for relief from judgment must be filed within a reasonable time. McAuley has not shown that his delay of eight months in filing his motion was a reasonable time.

[12] McAuley asserts that his due process rights were violated when the trial court failed to serve him with the January 24, 2011 order issued after the contempt hearing even though the trial court and the Allen County Clerk were aware that he was incarcerated in the DOC. Although the January 24 order showed that the trial court was aware that McAuley was incarcerated, McAuley has not shown that he provided the trial court with written notice of any change in address as he was required to do under the child support order. *Appellee's App. Vol. 2 at 3.* Therefore, even though the trial court knew that McAuley was incarcerated, there is no evidence that the trial court was aware of McAuley's actual address in the DOC. Additionally, McAuley alleges that the January 24 order found him to be in indirect contempt due to his failure to appear at the hearing; however, the order does not make such a finding. It merely stated that McAuley failed to appear, that he was currently incarcerated in the DOC, and that the case was continued "to be reset." *Appellant's App. Vol. 2 at 47.*

[13] McAuley also contends that he "impliedly litigated" a substantial change in his circumstances necessitating a modification of child support when he advised the trial court that he was incarcerated at the hearing held on September 30, 2010.

*Appellant's Br*. at 12-13. In its order denying McAuley's motion for relief from judgment, the trial court found that McAuley did not file a written motion to modify his child support. *Appellant's App. Vol. 2* at 19. Incarceration may constitute a substantial change in circumstances warranting a modification of an existing child support obligation, but such modification may not take effect on a date earlier than the date on which the petition to modify the child support obligation is filed. *Becker v. Becker*, 902 N.E.2d 818, 820-21 (Ind. 2009). Here, nothing in the record supports McAuley's argument that he impliedly litigated the issue of modification of his child support due to incarceration. There is no evidence that he filed a written petition to modify child support or that he even orally raised the issue at the September 30, 2010 hearing when he merely advised the trial court that he was incarcerated at that time and had been for the previous six months.[2] McAuley cites to *O'Campo v. O'Campo*, 597 N.E.2d 1314 (Ind. Ct. App. 1992) to support his contention that modification of child support can occur in the absence of a written petition upon the oral motion of either party. *Id*. at 1316. However, there is nothing in the record to support McAuley's assertion that he orally moved to modify his child support and stated grounds upon which he sought relief when he informed the trial court of his incarceration. Because he never filed a petition to modify his child support, the existing support order remained in force until Sheldon and Tayja became emancipated. We, therefore, conclude that McAuley has not shown that the

---

[2] We have not been provided with a transcript from the September 30, 2010 hearing.

trial court abused its discretion when it denied his motion for relief from judgment.

[14] Affirmed.

Baker, J., and Crone, J., concur.